IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH BELL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-03-3510 |
| | § | |
| DOUG DRETKE, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Kenneth Bell, a Texas prisoner, has filed a petition for a writ of habeas corpus challenging five state convictions under 28 U.S.C. § 2254. Respondent Doug Dretke has filed a motion for summary judgment regarding the merits of the petition, and Bell has responded. After considering the pleadings, the response, the applicable law, and the records, the court **GRANTS** the motion and **DISMISSES** the petition.

**I. Procedural History**

Bell was indicted for possession of a controlled substance, weighing not more than 28 grams and less than 200 grams, with intent to deliver. He entered a plea of not guilty and was tried before a jury. The jury found him guilty and sentenced him to seventy-five years in prison. *State v. Bell*, No. 9404451 (183rd Dist. Ct., Harris County, Tex. Nov. 7, 1995). Bell appealed; the Court of Appeals for the First Judicial District of Texas affirmed the conviction and sentence. *Bell v. State*, No. 01-95-01390-CR, 1998 WL 191712 (Tex. App.-Houston [1st Dist.] Apr. 23, 1998). The Texas Court of Criminal Appeals refused the subsequent petition for discretionary review (PDR) on September 23, 1998. *Bell v. State*, No. 1103-98.

Bell filed an application for a state writ of habeas corpus on December 16, 1999.  The Court of Criminal Appeals denied the application, without a written order, on August 27, 2003.  *Ex parte Bell*, No. 56,228-01.  The instant petition for a federal writ of habeas corpus was subsequently filed with this court.

## II. Petitioner's Grounds for Relief

In summary, Bell presents the following arguments:

1.    The evidence was factually insufficient to support the verdict because it does not prove beyond a reasonable doubt that Bell possessed cocaine.

2.    Bell received ineffective assistance of counsel at trial.

## III. Factual Background

In light of the allegations it is useful to review the facts of the challenged offense, as they were presented at trial.  The First Court of Appeals has made the following summary:

On the night of February 21, 1994, Officer Walker, and seven to nine other members of the Houston Police Department's Narcotics Division, executed a search and arrest warrant on an upscale townhouse. Several of the officers were in uniform, but most of them wore raid gear with "Houston Police" emblazoned across the front. The warrant expressly authorized the arrest of appellant [Bell] and the search of townhouse number 3306 for the purpose of locating cocaine.

The townhouse complex had a security guard at the entrance and a ten-foot brick wall topped with barbed wire along the perimeter. The officers entered the property through the security gate and then entered the identified townhouse through the front door by use of a battering ram. They divided and went through the two-bedroom unit. The only person discovered in the residence was "Duncan," who was lying on a pallet on the floor of the guest bedroom. The remainder of the house was furnished and clean, but the guest bedroom was "junky."

Duncan was passed-out and in an intoxicated state. Walker woke him and helped him to stand. Walker noticed that Duncan had been lying on a crack pipe, lighter, and several chunks of crack cocaine. The pipe was still warm, indicating recent use, and the rocks field-tested positive for crack cocaine. When asked, Duncan admitted smoking

crack cocaine that day. Walker testified that, in his experience, one of the chunks of crack was much larger than a person would smoke in a pipe.

In a kitchen cabinet, officers discovered 136.3 grams of crack cocaine and 51.2 grams of powder cocaine, an amount generally possessed only by a mid- to upper-level dealer. There were also several glass Pyrex measuring cups, a whisk, and several scales, like those cocaine dealers use in the trade. Walker noted that some of the cocaine was "cooked," probably to increase its market value by increasing its volume. The officers also found $7,000 hidden in the kitchen and master bedroom.

Walker was able to verify appellant lived in the particular unit through bills and other correspondence at the townhouse, including the lease which listed appellant and a former girlfriend as the lessees. Walker also found in the townhouse a vehicle title, pager receipts, cellular phone receipts, pawnshop slips, a receipt for tires, and airline tickets, all with appellant's name on them. Some of the papers listed appellant's name with the townhouse address, while others listed appellant's name with alternate addresses. Throughout the townhouse, there were many photographs of appellant with friends and associates.

The officers found several utility bills for the townhouse, which were in the name of Charles Spencer. Walker testified that, generally, drug dealers do not put utilities in their name, or "anything that would lead the police back to where they actually reside." Furthermore, Walker personally knew Spencer and knew Spencer lived at a different address. Additionally, during previous surveillance of the townhouse, Walker never saw Spencer enter or exit the residence.

In the master bedroom, officers found receipts in appellant's name from Versace, a clothing store at the Galleria. There were also several articles of expensive clothing consistent with the size and the style appellant usually wore. During three prior occasions of surveillance, Walker had become familiar with both appellant's body type and his style of clothing, noting appellant was always well-dressed. Duncan, on the other hand, was shorter than appellant. When officers found Duncan in the guest bedroom, he was dirty, disheveled, and dressed in well-worn, old clothes.

The officers decided to wait at the townhouse for appellant to return. Walker did not believe appellant would leave a cocaine abuser like Duncan alone in his house for very long with a large amount of cocaine and money. The officers hid their cars and vans, then Sergeant Ramsey went to the security gate and waited for appellant to return. Ramsey radioed the officers at the townhouse that appellant had driven into the complex.

When appellant opened the garage door with his remote control and saw police officers waiting to arrest him, he immediately closed the garage with the remote. The officers ran to re-open the garage with the wall unit. Patrol cars pulled behind appellant and

blocked his exit. The officers then arrested appellant. The officers found two "swishers" (cigars filled with marijuana) in appellant's car. Appellant was also in possession of a key that fit the back door of the townhouse, a cellular telephone, and just over $1,000 cash in appellant's Fendi wallet.

*Bell v. State*, 1998 WL 191712, at ** 1-2.

## IV. <u>The Applicable Legal Standards</u>

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The intent of the AEDPA is to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under the law, *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002), by limiting the scope of collateral review and raising the standard for federal habeas relief. *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003).

Under the AEDPA, federal relief cannot be granted on claims adjudicated on the merits in state court unless the state adjudication was (1) contrary to clearly established federal law as determined by the Supreme Court, or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor,* 120 S.Ct. 1495, 1519 (2000)*, citing* 28 U.S.C. §§ 2254(d)(1) and (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 123 S.Ct. 362, 365 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 120 S.Ct. at 1520, 1523. In deciding whether a

state court's application was unreasonable, this court considers whether the application was objectively unreasonable. *Id.* at 1521

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1041 (2003).  A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Miller-El*, 123 S.Ct. at 1036.

These standards will be applied to the pending summary judgment motion.

## V. <u>Analysis</u>

A. <u>Sufficiency of the Evidence</u>

Bell argues that the evidence was legally insufficient to prove beyond a doubt that he possessed the cocaine.  In support of this argument, Bell asserts that he was not present when the search warrant was executed.  *See Petition*, Docket Entry No. 1, at 6.  He further maintains that the controlled substance was not in plain view and was not found in his townhouse bedroom.  *Id*. at 7. Moreover, he was not under the influence of the controlled substance when he arrived at the townhouse.  *Id*.   Bell concedes that there were two marihuana cigars in his car, but argues that the small amount of marihuana does not affirmatively link him to the cocaine found in the kitchen cabinet of the townhouse.  *Id*. at 7-8.  He also points out that he made no incriminating statement or  furtive gesture, and that he did not make any attempt to flee at the time he was arrested.  *Id*. at 8.  Bell adds that there was no evidence of there being any odor of the controlled substance.  *Id*.

Bell notes that the cocaine was found in a kitchen cabinet.  *Id*.  He further observes that there were no discernible prints found on paraphernalia used to process the cocaine (scales, Pyrex cups, and mixing whisk) and that some of the items were never tested.  *Id*. at 8-9.

Bell disputes whether there was sufficient evidence to prove that he owned or had a right to possess the townhouse where the cocaine was found.  *Id*. at 9.  He concedes that his name was on many receipts found there and that there were several photographs with his image.  *Id*.  However, he notes that some of the documents had different addresses and that Charles Spencer's name was on some of them.  *Id*.  Moreover, while Bell's name was on the lease, co-lessee was also listed, and another person, Dwayne Duncan, was in the townhouse at the time of the search.  *Id*.  at 10.  Bell concludes that the evidence supports a finding of innocence and that the conviction should be reversed.

The standard of review for an insufficient evidence claim in a federal habeas corpus proceeding is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999), *citing Jackson v. Virginia*, 99 S.Ct. 2781, 2789 (1979).  "All credibility choices and conflicting inferences are to be resolved in favor of the verdict."  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005), *quoting United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir.1999).  The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder.  *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

The First Court of Appeals concluded that there was sufficient evidence to prove Bell's guilt under Texas law.  *Bell*, 1998 WL 191712, at *3.  The appellate court held that the State was

required to prove (1) Bell knew of the cocaine's existence and (2) he exercised control, care, or management over it. *Id*. at 2, *citing Johnson v. State*, 658 S.W.2d 623, 627 (Tex. Crim. App. 1983); *Hurtado v. State*, 881 S.W.2d 738, 743 (Tex. App. – Houston [1st Dist.] 1994, pet. ref'd). *See also Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.– Houston [14th Dist.] 2005). It was not necessary to show that Bell had exclusive control over the area where the cocaine was found; however, if control was jointly exercised with other persons, the prosecution needed to present additional affirmative links which would raise a reasonable inference that Bell knew about and had control over the cocaine. *Id.*, *citing Cude v. State*, 176 S.W.2d 46, 47 (Tex. Crim. App. 1986); *Villegas v. State*, 871 S.W.2d 894, 896 (Tex. App. – Houston [1st Dist.] 1994, pet. ref'd). Some of the relevant factors included (1) Bell's presence when the search was conducted; (2) whether the cocaine was in plain view; (3) Bell's proximity to the cocaine and the cocaine's accessibility; (4) whether Bell was under the influence of narcotics; (5) whether Bell possessed any narcotics or other contraband when he was arrested; (6) whether Bell made any incriminating statements at the time of his arrest; (7) whether Bell made any attempt to flee; (8) whether Bell made any furtive gestures; (9) whether any odor was detected; (10) whether other contraband or drug paraphernalia were present; (11) whether Bell owned or had the right to possess the townhouse where the drugs were found; (12) whether the place where cocaine was found was enclosed; (13) whether Bell was found with a large amount of cash; and (14) whether Bell's conduct indicated a consciousness of guilt. *Olivarez*, at 291, *citing Washington v. State*, 902 S.W.2d 649, 652 (Tex. App.– Houston [14th Dist.] 1995, pet. ref'd); *Chavez v. State*, 769 S.W.2d 284, 288-89 (Tex. App.– Houston [1st Dist.] 1989, pet. ref'd).

The First Court of Appeals found that the evidence showed that Bell was in control of the townhouse. *Bell*, 1998 WL 191712, at *3. The Court noted that the lease was in Bell's name and that there were various receipts, bills, letters, and airline tickets in the townhouse which had his name on them. *Id.* In addition, Bell had the townhouse's back-door key and garage opener in his possession, and he was ready to enter the townhouse's garage when he was arrested. *Id.* This evidence is sufficient to uphold a finding that Bell was in constructive possession of the cocaine. *See United States v. Cawthorn*, 429 F.3d 793, 799 (8th Cir. 2005) (cocaine found at night club where defendant worked).

In addition, when Bell saw the police after he opened the garage, he immediately pushed the button to close it. *Bell*, 1998 WL 191712, at *3. Further, the police found a substantial amount of cash in the townhouse and on Bell's person. *Id.* There was also drug paraphernalia in the kitchen as well as cocaine that had been "cooked" or processed into crack. *Id.* The First Court concluded that the evidence was legally and factually sufficient to prove that Bell knew about the cocaine and that he exercised care, control or management over it. *Id.*

The First Court's conclusion is based on the jury's findings. As finder of fact, the jury has the sole authority and responsibility for weighing the conflicting evidence and determining the credibility of the witness testimony. *United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999); *United States v. Millsaps*, 157 F.3d 989, 994 (5th Cir. 1998). It is not the courts' role to second-guess the juries' determinations. *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005).

The state court's determination is supported by the record and must be presumed correct by this court. *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993). This court agrees that there was ample evidence to support the jury's finding that Bell was guilty beyond a reasonable doubt.

*See United States v. Asibor*, 109 F.3d 1023, 1030-31 (5th Cir. 1997).  The state court's rejection of Bell's sufficiency of the evidence claim is not an unreasonable application of *Jackson v. Virginia*, and he is not entitled to relief under AEDPA.

     B. Ineffective Assistance of Counsel

     Attorneys Mark Goldberg and Ron Wilson represented Bell at trial.  Bell makes nineteen claims in support of his argument that he received ineffective assistance of counsel during the guilt/innocence and punishment stages of his trial.  They are summarized as follows:

1.     Trial counsel failed to make objections to witness testimony (Claims 1-6, 11, 17, 18);

2.     Trial counsel failed to make a proper objection to the prosecution's argument (Claims 7, 8, 14, 16);

3.     Trial counsel failed to request jury instructions (Claims 9, 12);

4.     Trial counsel failed to object to a forced entry by police (Claim 10);

5.     Trial counsel offered Bell as a witness at the punishment stage of the trial (Claim 13);

6.     Trial counsel failed to object to a State's exhibit (Claim 15); and

7.     Trial counsel failed to object to in-court testimony respecting evidence which had presumably been destroyed (Claim 19).

*See Petition*, Docket Entry No. 1, at 12-24.

     The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 104 S.Ct. 2052 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual

prejudice as a result of counsel's deficient performance. *Id.* at 2064. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998); *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 104 S.Ct. at 2064. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel which indicate a lack of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 104 S.Ct. at 2066. Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 2068. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 113 S.Ct. 838, 844 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled. Id.

### 1.   Failure to Make Objections to Witness Testimony

In Claims 1 through 5, Bell asserts that his trial counsel failed to make objections to Houston Police Officer Walker's testimony regarding Bell's identification by the police. Walker testified that the other officers knew Bell. Vol. 1 Statement of Facts (SF) 17-18. Walker also stated that Bell was

always dressed "nicely."  1 SF 117-18.  Walker later testified that he had conducted surveillance on Bell's residence on several occasions.  1 SF 196-97.  Bell argues that Walker's testimony implies extrinsic criminal conduct and prejudiced the jury against him under the Rules of Evidence 403 and 404(b).   In Claims 17 and 18, Bell contends that his attorney was deficient when he failed to properly object to testimony with regard to his responses after he was arrested.   Walker twice remarked that when he questioned Bell he refused to answer and stated that he wanted to see his attorney first.  1 SF 83-84, 93.  Bell contends that objections should have been made and that the trial court would have been required to exclude the evidence if trial counsel had made the proper objections.

There is little to support Bell's reasoning that the testimony in question implied extrinsic criminal activities.  In an apparent attempt at levity, he argues that "[u]nless the Court wants to believe that all the police officers, including Walker, knew Petitioner because they had seen him riding his steed at Pin Oaks Stables or Walker *reconned* [sic] him on three occasions for a movie role, the clear import of this testimony shows extrinsic criminal conduct."  Bell presumes that the officers were familiar with him only because they had previously encountered him while he was in the course of committing illegal acts.  A police officer's testimony that he and other officers were able to recognize the defendant does not imply other criminal activities to the extent that such testimony would automatically provoke a negative response from the jury.  *United States v. Fagan*, 996 F.2d 1009, 1015 (9th Cir. 1993) (brief reference to defendant's gang membership was probative regarding identity).  It is clear that Walker's testimony that Bell dresses well does not in any way imply criminal activity and is an acceptable means of identifying him.  *See United States v. Rogers*, 769 F.2d 1418, 1426 (9th Cir. 1985).  The trial court did not err in allowing testimony concerning

the past surveillance because there is no reference to other crimes and its probative value sufficiently outweighs any prejudicial effect it may have had.  *United States v. Redd*, 355 F.3d 866, 879-80 (5th Cir. 2003).  Moreover, the testimony was made in response to the defense's cross-examination of the police officers in which they admitted they found telephone bills in Spencer's name and that Bell's driver's license had an address which did not match that of the residence where the search and arrest occurred.  1 SF 101-103, 166-70.  There was also an admission that no cocaine was found on Kenneth Bell.  1 SF 105.  Bell's able trial counsel elicited testimony which gave the jurors the impression that Bell had no connection with the drugs or the residence where they were found.  In doing so, the defense "opened the door" to the admission of evidence showing that Bell did live at the residence.  *See Lucas v. Johnson*, 132 F.3d 1069, 1081-82 (5th Cir. 1998).  There is no indication that the objections would have been upheld, and Bell's counsel was not ineffective for failing to pursue futile challenges.  *Clark v. Collins*, 19 F.3d 959, 966  (5th Cir. 1994).

It is well established that the State cannot use the defendant's silence or his request for an attorney to prove his guilt.  *Doyle v. Ohio*, 96 S.Ct. 2240 (1976); *Griffin v. California*, 85 S.Ct. 1229 (1965).  Bell alludes to two instances when Walker commented on his silence and request for an attorney when he was arrested.  In the first instance, Walker testified that he asked Bell if he lived at the townhouse being searched, and that Bell responded that he wanted to see his attorney first.  1 SF 83-84.  No further statements or arguments were made regarding Bell's refusal to state whether he lived there.  In the second instance, Walker testified that he asked Bell what he wanted done with his car and that Bell again refused to answer and said that he wanted a lawyer.  1 SF 94. There was no further discussion concerning Bell's refusal to state what he wanted done with the car.  Bell has not shown that the admission of these statements had any substantial and injurious effect on the

jury's deliberation.  *See Tucker v. Johnson*, 242 F.3d 617, 628-29 (5th Cir. 2001), *citing Brecht v. Abrahamson*, 113 S.Ct. 1710 (1993).  In light of the considerable evidence against Bell and the relatively insignificant attention paid to Bell's silence and requests for an attorney, it cannot be held that the outcome of the trial would have been different if the defense had properly objected to Walker's statements and Bell's counsel cannot be held to be ineffective for failing to object to the statements.  *Id.*

In Claim 6, Bell complains that Officer Walker's statement concerning Spencer's address would have been excluded if Bell's counsel had raised a proper objection.  Walker testified that he personally knew that Spencer had lived on Bentley Street and had moved to Bungalow Street near Martin Luther King Blvd.  1 SF 198.  He further stated that he never saw Spencer at the townhouse located on Reims.  1 SF 199. Walker's testimony regarding the residence is admissible because it concerns information Walker gathered during course of his investigation and was an obvious and reasonable deduction.  *See United States v. Balthazard*, 360 F.3d 309,  318-19 (1st Cir. 2004).

In Claim 11, Bell alleges that his counsel was ineffective during the trial's punishment stage when a witness, Sergeant Ramsey, gave testimony of Bell committing an extraneous offense, murder.  3 SF 246-312.  Bell contends that Ramsey gave inadmissible opinion testimony that Bell was guilty of murder.  3 SF 306-07.  Ramsey was called as a witness because he had conducted a homicide investigation regarding Bell.   3 SF 247.  Ramsey investigated the scene of the crime, viewed the victim's body before it was removed from where the victim had been shot, interviewed witnesses, and took a statement from Bell.  3 SF 248-55.  In his statement, Bell admitted shooting the victim although he claimed that his gun discharged by accident, killing his friend while they were in the course of committing a drive-by shooting.  3 SF 307-11.  Officer Ramsey was familiar

with the facts and circumstances of the shooting and could give his opinion as to whether Bell had committed murder. *See United States v. Bogan*, 267 F.3d 614, 619-20 (7th Cir. 2001). The trial court did not err in admitting such testimony and Bell's trial counsel was not deficient in preventing its admission.

### 2.    Failure to Object to Prosecution's Argument

Bell complains that his counsel was deficient when he failed to make a proper objection to the prosecution's argument. In Claim 7, he contends that a proper objection would have been sustained in regard to the argument: "On the other hand, if you've got 189 grams of cocaine in your house, what are you going to say?" Bell asserts that the argument is a direct comment on Bell's failure to testify.

In Claim 8, Bell claims that trial counsel failed to make a proper objection to: "The co-defendant [Duncan] himself took responsibility for what he did. What he did was smoke this. Was the other stuff yours? No. Is this house mine? No." 2 SF 237. The trial court previously overruled a hearsay objection regarding Duncan's hearsay admission that he had been smoking crack cocaine. 1 SF 34-35. However, the court later sustained a hearsay objection to a question regarding Duncan's ownership of clothing. 1 SF 65. Bell contends that the prosecution's remarks injected harmful and unsworn testimony before the jury and that a proper objection to the argument would have been sustained because it was unsupported.

In Claim 14, Bell complains that his trial counsel failed to object to the prosecution's misstatement of the law regarding unauthorized use of a motor vehicle. Bell argues that knowing that the subject vehicle is stolen is not an element of an unauthorized use of a motor vehicle offense. He contends that an objection would have been sustained. In Claim 16, Bell contends that his

14

attorney was ineffective for failing to object to the prosecution's argument in regard to the Galveston District Attorney's Office Attempt to revoke his probation.  He argues that a proper objection would have been sustained.

Under Texas law, a prosecutor during final argument may: make a summation of the evidence; make any reasonable deduction from the evidence, answer an argument of the opposing counsel, and make a plea for law enforcement.  *Bigby v. State*, 892 S.W.2d 864, 889 (Tex. Crim. App. 1994).  In a federal habeas corpus proceeding, this court must review allegedly improper prosecutorial arguments under a strict standard.  *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000).  It is not enough that the prosecutors' statements are considered undesirable or even found to be universally condemned.  The relevant issue is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.  *Darden v. Wainwright*, 106 S.Ct. 2464, 2471 (1986).  To warrant federal habeas relief, the objectionable remarks must render the entire trial fundamentally unfair.  *Id.*

A prosecutor cannot comment on a defendant's failure to testify.  *United States v. Fierro*, 38 F.3d 761, 771 (5th Cir. 1994), *citing United States v. Bright*, 630 F.2d 804, 825 (5th Cir.1980).  However, a prosecutor's reference to the absence of evidence is not always an impermissible comment regarding the defendant's silence.  *United States v. Zanabria*, 74 F.3d 590, 592-93 (5th Cir. 1996).  During the final argument at Bell's trial, the prosecutor did not directly comment on the defendant's lack of testimony.  Instead, the prosecutor focused on the law concerning possession with regard to items within a residence. 2 SF 229-233. He further made the point that a homeowner would generally acknowledge possession of the items within his home but would distance himself from those items which are illegal.  2 SF 231-32. He then asked the question, "On the other hand,

if you've got 189 grams of cocaine in your house, what are you going to say?"  2 SF 233.  The prosecution's question was rhetorical and within bounds of the prosecution's right to use logic in persuading the jury to draw conclusions from the evidence. *United States v. Green*, 305 F.3d 422, 430 (6th Cir. 2002); *United States v. Sorzano*, 602 F.2d 1201, 1202 (5th Cir. 1979).  There is no indication that the prosecutor's statement was intended to be a comment on Bell's failure to testify. *See Beathard v. Johnson*, 177 F.3d 340, 350-51 (5th Cir. 1999).  Therefore, Bell was not prejudiced by the question and his attorney was not deficient in failing to raise a proper objection.

There is no support to Bell's argument that his attorney erred in failing to raise a proper objection to the prosecution's statement regarding Duncan's admission that he smoked crack cocaine.  Such evidence is admissible as a statement against interest. *United States v. Bell*, 367 F.3d 452, 465-66 (5th Cir. 2004).  Bell has failed to show that his counsel was deficient regarding Duncan's statement.

Bell challenges his counsel's failure to object to the prosecution's misstatement of the law regarding unauthorized use of a motor vehicle.  Under Section 31.07 of the Texas Penal Code, a person commits such an offense if he intentionally or knowingly operates a vehicle without the effective consent of the owner.  The prosecutor misstated the law by adding that Bell knew that the vehicle was stolen.  3 SF 393.  However, Bell fails to show how this statement prejudiced him.  In addition to the unauthorized use of a motor vehicle offense, the prosecutor cited Bell's history of crimes including weapons charges.  3 SF 395-96.  Moreover, Bell had been on probation and there was evidence that he had shot an acquaintance.  Although Bell was sentenced to seventy-five years in prison, he was not given the maximum life sentence.  Given Bell's extensive criminal history and other factors considered at the punishment stage, there is no support to the argument that a minor

misstatement on the law regarding unauthorized use of a motor vehicle prejudiced Bell during the punishment stage of his trial. *See United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996). Bell's counsel was not deficient in failing to object to the prosecutor's misstatement.

Bell contends that his attorney was ineffective for failing to object to the prosecutor's argument that the Galveston County District Attorney's Office tried to revoke his probation. 3 SF 395. During the punishment phase of the trial, the prosecutor offered into evidence, over defense counsel's objection, criminal records from Galveston County (State's Exhibit 27) which included a motion to revoke probation. The prosecutor's statement was not improper because it was reasonably based on the evidence admitted at trial. *Dowthitt*, 230 F.3d at 755. There is no support for the argument that the outcome of the trial would have been different had Bell's attorney objected to this statement.

### 3.   Failure to Request Jury Instructions

In Claims 9 and 12, Bell argues that his attorney was deficient in failing to request jury instructions during the guilt/innocence stage regarding the two marijuana cigars found in his car and during the punishment stage concerning the extraneous murder offense. Bell contends that the jury should have been instructed not to consider the cigars and the murder offense unless the State had proved them beyond reasonable doubt. To prevail in such an argument, Bell must show that the attorney's failure to request such an instruction was an error which was so serious that it fell below an objective standard of reasonableness and consequently harmed the defense. *Thacker v. Dretke*, 396 F.3d 607, 614 (5th Cir. 2005), *citing Yarborough v. Gentry,* 124 S.Ct. 1, 4 (2003).

The marijuana cigars were admissible because they were found at the time of the arrest and discovery of the cocaine. *See United States v. Posner*, 865 F.2d 654, 658 (5th Cir. 1989). Such

evidence was admissible, without a limiting instruction, to show Bell's predisposition.  *Id*. Consequently, he cannot show that he was prejudiced by trial counsel's failure to request a jury instruction prohibiting consideration of the marijuana cigars.

Bell's complaint concerning the jury's consideration of the murder offense during the punishment phase is unavailing because he has not shown that there is a constitutional requirement that the jury be instructed that the unadjudicated offense be proven beyond a reasonable doubt.  *See Beazley v. Johnson*, 242 F.3d 248, 262 (5th Cir. 2001); *Harris v. Johnson*, 81 F.3d 535, 540-41 (5th Cir. 1996).  The introduction of unadjudicated offenses during the punishment phase "does not implicate constitutional concerns."   *Harris*, at 41.  Indeed, a jury is obligated to consider such relevant information when determining punishment.  *See Milton v. Procunier*, 744 F.2d 1091, 1097 (5th Cir. 1984).  *See also Givens v. Cockrell*, 265 F.3d 306 (5th Cir. 2001). Therefore, Bell's attorney was not deficient in not seeking a reasonable doubt instruction regarding the murder charge.

### 4.    Failure to Object to Forced Entry by Police

In Claim 10, Bell complains that his attorney was deficient when he failed to object to a forced entry by police by the use of a battering ram contemporaneous with the announcement of their presence.  Citing *Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S.Ct. 1914, 1918 (1995),[1] Bell contends that police officers must knock before attempting forcible entry.  In *Wilson*, the Supreme Court held that the "knock and announce" principle is an element of whether a search is reasonable under the Fourth Amendment.  *Id*.  The Court also stated that not every entry is preceded by an

---

[1]Bell also cites *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 1421-22 (1997) which was decided after Bell was tried and convicted.  In his response, Bell cites only *Wilson v. Arkansas.*

announcement and that the "Fourth Amendment's flexible requirement of reasonableness" does not impose an invariable announcement requirement . *Id.*

The trial record establishes that the police used a battering ram to knock down Bell's front door and enter his townhouse.  1 SF 23-24.  The police shouted out, "Houston Police" the moment they hit the door.  1 SF 24.  Bell was not in the townhouse when the police made their entry; however, they did find Duncan in an intoxicated state.  1 SF 28-30.  The police waited, and Bell was arrested when he arrived at the townhouse at a later time.  1 SF 78-83.

Bell's counsel, Mark Goldberg, responded to the forced entry claim during the state habeas proceedings.  In his affidavit, Goldberg stated that he did not believe that the police officers' failure to knock on the residence's door before entering constituted a Fourth Amendment violation.  *Ex parte Bell*, No.56,228-01 at 58.

The purpose of a police announcement before conducting a search is to avoid a breach of the peace by assuring the resident that the search is legal.  *United States v. Stefonek*, 179 F.3d 1030, 1035 (7th Cir. 1999).  If the resident is absent, there is no need for the police to knock and announce their purpose.  *Id.*  In the present action, Bell was not in the townhouse when the police entered it and the only occupant was Duncan who was intoxicated.  Morever, Bell attempted to argue at trial that he did not have any connection to the townhouse.  At closing argument during the guilt/innocence stage of the trial, his counsel stated, "There is no concrete evidence linking Kenneth Bell to that house."  2 SF 210-12.  There is little to support a claim that Bell's Fourth Amendment rights were violated when the police searched a house that he alleges that he did not own or occupy.  Consequently, a challenge to the search would not have succeeded, and his counsel's strategy, while

unsuccessful, could not be considered unsound to the extent that it was constitutionally deficient. *See Strickland*, 104 S.Ct. at 2065-66.

5.     Offering Bell's Testimony at Punishment

In Claim 13, Bell complains that his attorney offered him as a witness during the punishment stage of the trial for the sole purpose of proving up his eligibility for probation without subjecting him to full cross-examination.  3 SF 331-34.  Bell testified that he had never been convicted of a felony or a misdemeanor of moral turpitude.  3 SF 335-36.

On cross-examination Bell admitted to the prosecutor that he had not filed any income tax returns for 1993 and 1994 although he had been gainfully employed during those years.  3 SF 339. The prosecutor also interrogated Bell about Charles Spencer's whereabouts and numerous expensive items found at the townhouse. 3 SF 350-51.  Most damaging of all, the prosecutor presented Exhibit 27, certified copies of a judgment of conviction and probation for unauthorized use of a motor vehicle and probation out of Galveston County.  3 SF 371-73.

In the state habeas proceeding, Bell's counsel stated that he did not believe that it was necessary for Bell to testify during the punishment stage but that Bell insisted on doing so.  *Ex parte Bell*, at 58.  Bell's attorney cannot be found to be deficient for doing something that his client requested.  *Black v. Cockrell*, 314 F.3d 752, 755-56 (5th Cir. 2002).  This court cannot grant Bell relief on this claim because doing so would allow Bell "to avoid conviction on the ground that his lawyer did exactly what he asked him to do."  *United States v. Masat*, 896 F.2d 88, 92 (5th Cir. 1990).

### 6.      Failure to Object to State's Exhibit 27 - Motion to Revoke Probation

In Claim 15, Bell complains that his attorney was ineffective in failing to object to the portion of State's Exhibit 27 which included a motion to revoke his probation for unauthorized use of a motor vehicle which was later withdrawn.  Bell contends that the motion and withdrawal are inadmissible under TEX. CODE CRIM. PRO. art. 37.07 and that a proper objection would have been sustained.

The trial court's record shows that the prosecutor offered certified documents relating to the Galveston probation during Bell's cross-examination.  3 SF 373.  Bell's counsel objected to the documents; the trial court overruled the objection because Bell admitted that he had been on probation.  3 SF 374.  Bell's allegation that his attorney failed to object is refuted by the record. Moreover, under Texas law in non-capital cases, the prosecution may present records concerning probation and revocation, even for unadjudicated offenses.  *See* TEX. CODE CRIM. PRO. art. 37.07 § 3(a)(1); *Labarbera v. State*, 835 S.W.2d 775, 777 (Tex. App.- Hous. [14th Dist.]  1992).  Trial counsel have not been found to be ineffective for failure to object to such evidence.  *Murray v. State*, 840 S.W.2d 675, 679-80 (Tex. App. - Tyler 1992).  Bell is not entitled to relief because he has failed to demonstrate that his attorney failed to make a sustainable objection to the evidence.

### 7.      Failure to Object to Destruction of Evidence

In Claim 19, Bell complains that his counsel was ineffective for making rudimentary objections to in-court testimony regarding documentary evidence which had been destroyed. Specifically, Bell asserts that there was in-court testimony concerning light bills, written correspondence, a lease agreement, personal papers, and receipts which linked Bell to the townhouse; however, the documents were not produced at trial because they had been destroyed

after they had been taken to the police property room.   1 SF 54, 55, 62, 65, 103, 110, 114.  Bell

contends that his counsel should have raised an objection coupled with confrontation and denial of

cross-examination objections.

The trial record shows that Bell's attorney did raise objections, based on various grounds

including hearsay, to testimony regarding the receipts; however, the court overruled them.  1 SF 53-

58 60, 62, 64-65.  Bell fails to show that his attorney was deficient or that the court would have

sustained the objections had he raised right to confrontation and cross-examination grounds.  *See*

*Carson v. Collins*, 993 F.2d 461 (5th Cir. 1993).

Moreover, the Texas Court of Criminal Appeals determined that Bell failed to show

ineffective assistance of counsel under *Strickland v. Washington*.  *Ex parte Bell*, No. 56,228-01, at

155.  This finding was based on a review of the state court records.  *Id*. 134-154.  The Court's

findings of fact are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  *Valdez*

*v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001).  This court finds that the state trial and appellate

courts' decisions are not contrary to, nor do they involve any unreasonable application of, federal

law; nor are the courts' findings unreasonable in light of the record.  28 U.S.C. § 2254(d). Therefore,

Bell is not entitled to federal habeas relief, and his petition for a writ of habeas corpus is

**DISMISSED**.

## VI. Certificate of Appealability

Under 28 U.S.C. § 2253, Bell needs to obtain a Certificate of Appealability before he can

appeal this Memorandum and Order dismissing his petition.   To obtain a Certificate of

Appealability, Bell must make a substantial showing of the denial of a constitutional right. *Williams*

*v. Puckett*, 283 F.3d 272, 276 (5th Cir. 2002).  To make such a showing, Bell must demonstrate that

the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further. *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998). For the reasons stated in this Memorandum Opinion and Order, Bell has not made a substantial showing of the denial of a constitutional right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). The Court **DENIES** the issuance of a Certificate of Appealability in this action.

## VI. <u>Conclusion</u>

The Court **ORDERS** the following:

1.   Respondent's Motions for Extensions of Time (Docket Entry No. 8 and 10) are **GRANTED**.

2.   Bell's Motions for Extensions of Time to File a Response (Docket Entry No. 13 and 14) are **GRANTED**.

3.   Respondent's Motion for Summary Judgment (Docket Entry No. 11) is **GRANTED**.

4.   This action is **DISMISSED**, with prejudice.

5.   A Certificate of Appealability is **DENIED**.

**SIGNED** on this 16th day of February, 2006.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE